IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | No. 2:16-cr-00121-DCN |
| vs. | ) | |
| | ) | **ORDER** |
| GARNDELL JEROME MACON, JR., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court on a motion to suppress filed by defendant Garndell Jerome Macon, Jr. ("Macon"). For the following reasons, the court denies Macon's motion in full.

## I. BACKGROUND

On October 10, 2017, Charleston Police Department officers Mallek and Newcomb were on routine patrol in the parking lot of the Palace Apartments at 1000 King Street in Charleston, South Carolina. The officers observed a number of individuals loitering in the parking lot and the odor of marijuana around a black Honda CRV ("Honda CRV") located on the south side of the parking lot. The officers observed two individuals place a digital scale on the hood of the Honda CRV and quickly walk away. After searching around the Honda CRV, the officers found plastic baggy pieces, a digital scale, and multiple cigar wrappers. Officer Harkins, another officer in the Charleston Police Department, was then called to the scene. Harkins observed a black male with dreadlocks pick up a digital scale that had been on the hood of the Honda CRV, open the rear driver-side door, and remove a firearm. Officers Mallek and Newcomb then observed a black male matching the description provided to them by Officer Harkins

1

running from the Honda CRV towards the front entrance of the apartment building, and entering a doorway on the south side of the first floor hallway.

Officers Mallek and Newcomb then entered the apartment building and waited outside of apartment 106, the apartment that the officers had viewed the suspect run to. Lasheaka Nelson ("Nelson"), the tenant of apartment 106, opened the door to the apartment and informed the officers that her cousin Macon—a black male with dreadlocks who matched the description of the suspect—was located inside the apartment and provided verbal consent to the officers to enter the apartment. The officers detained Macon inside the apartment, and after some time, Charleston Police Department Sgt. LaFromboise entered the apartment and spoke with Nelson, who again provided consent to search the apartment. Nelson was then provided a "consent to search" form, which she signed.

After Nelson signed the consent form and Macon had been detained, the officers went to the bedroom and lifted the mattress off the bed, finding a .45 caliber Glock 21 between the mattress and the box spring. The officers then arrested Macon, and during the resulting search of his person, found a plastic baggy of marijuana in Macon's right sock. The officers then went to the parking lot of the Palace Apartments and searched the Honda CRV. The officers found a .40 caliber Smith and Wesson XD handgun on the rear floorboard behind the driver's seat of the Honda CRV. Def.'s Mot. 5. While the officers were removing the Smith and Wesson handgun and its ammunition, the registered owner of the Honda CRV, Tiffany Jenkins ("Jenkins"), approached the officers and told them

that the Honda CRV had been mechanically disabled and had not been able to be moved "for months."[1]

Macon has a 2001 conviction for assault with intent to kill, a crime carrying punishment of over one-year of imprisonment. Macon was arrested, and later indicted, for two counts of unlawful carrying of a handgun, two counts of possession of a firearm by a convicted felon, and simple possession of marijuana.

On February 1, 2017, Macon moved to suppress: (1) the Glock .45 caliber pistol and the .45 caliber ammunition found at Nelson's apartment, and the (2) Springfield Arms Smith and Wesson Model XD .40 caliber pistol and .40 caliber ammunition found in the Honda CRV. The government opposed the motion to suppress on April 20, 2017. The court held a hearing on April 25, 2017. The motion has been fully briefed and is now ripe for the court's review.

## II. DISCUSSION

Macon presents a number of different arguments challenging the constitutionality of the search of Nelson's apartment and of the Honda CRV. However, a person must have a "legitimate expectation of privacy" in the place searched to have standing to challenge a search under the Fourth Amendment. Rakas v. Illinois, 439 U.S. 128, 134 (1978). As explained below, Macon did not have a legitimate expectation of privacy in either Nelson's apartment or the Honda CRV. Since the court finds that Macon does not

---

[1] During the hearing on this motion, the parties stipulated to the facts as presented in the preliminary hearing in state court, where the State of South Carolina is prosecuting Macon on charges stemming from this same incident. The court reviewed the videotape of the preliminary hearing in state court and finds that it is consistent with the facts stated in the parties' briefing.

have standing under the Fourth Amendment to challenge either search, it denies Macon's motion to suppress the evidence that was seized during the searches.

### A. Search of the Apartment

Macon has no legitimate expectation of privacy in Nelson's apartment, so he does not have standing under the Fourth Amendment to challenge the search. Even if Macon did have standing, Nelson gave both verbal and written consent for officers to search the apartment. Accordingly, the court finds that search of the apartment did not impinge on Macon's Fourth Amendment rights and denies the motion to suppress as to the the Glock .45 Caliber pistol and .45 caliber ammunition found in the apartment.

#### 1. Fourth Amendment Standing

The Fourth Amendment's guarantee of the right "to be secure in their persons, houses, papers, and effects," protects individuals living in a large number of legal arrangements. U.S. Const. amend. IV. Not every visitor "merely present with the consent of the householder" has a legitimate expectation of privacy recognized by the Fourth Amendment. Minnesota v. Carter, 525 U.S. 83, 90 (1998). However, a person "may have a legitimate expectation of privacy in the house of someone else." Id. at 89. The fact that Macon was in Nelson's home at the time of the search does not, in and of itself, mean that he cannot claim the protection of the Fourth Amendment. However, under Rakas the burden is on Macon as the criminal defendant to demonstrate that he had an expectation of privacy in Nelson's apartment, and he has failed to meet this burden.

Until a valid search warrant has been issued, the Fourth Amendment safeguards the privacy interests of owners, Agnello v. United States, 269 U.S. 20, 33 (1925), boarders, McDonald v. United States, 335 U.S. 451, 454–56 (1948), and tenants,

Chapman v. United States, 365 U.S. 610 (1961), of a home or other dwelling place. Co-tenants, co-owners, and co-occupants are also protected by the Fourth Amendment. See Georgia v. Randolph, 547 U.S. 103 (2006). Even an overnight guest or a frequent visitor at an apartment may have a legitimate expectation of privacy in the apartment, regardless of whether he is on the lease. Minnesota v. Olson, 495 U.S. 91, 95–98 (1990) (overnight guest); Bonner v. Anderson, 81 F.3d 472, 475 (4th Cir. 1996) (frequent visitor). However, Macon alleges no facts to support a finding that he was an overnight guest or a frequent visitor at Nelson's apartment, let alone the owner or a co-tenant. Instead, Macon focuses his argument on the fact that he was in his relative's home at the time of the search. The court acknowledges that the relatives of home owners who regularly reside at the residence are protected by the Fourth Amendment. Bumper v. North Carolina, 391 U.S. 543, 546–48 (1968). However, although Macon discusses at some length the law surrounding the privacy interests of relatives, at no point does he state that he regularly resided in Nelson's home, and Bumper affords Fourth Amendment protections only to those relatives who regularly reside at the residence. The simple fact that Macon was located inside Nelson's home at the time of the search does not in and of itself give him Fourth Amendment standing to challenge the search.

There are other circumstances in which a defendant may claim Fourth Amendment protections in someone else's home, but Macon has not proven that the search of the apartment can be challenged under any of these protections. For example, in Bonner v. Anderson the Fourth Circuit found that a defendant could claim the protection of the Fourth Amendment for a search that occurred in her neighbor's house where the defendant was a frequent visitor at her neighbor's house and had significant

5

ties to her neighbor. Bonner, 81 F.3d at 475. Here, there is no evidence that Macon was a frequent visitor at his cousin's apartment. The court finds this case to be more analogous to United States v. Lockett, 919 F.2d 585, 588 (9th Cir. 1990), where the court held that a defendant who did not reside at or show a proprietary interest in a residence, and who could not show joint control or supervision of the property, lacked Fourth Amendment standing to challenge a search. Similarly, here, Macon has not shown that he resided in or had a proprietary interest in Nelson's residence, and he also has not shown that he had joint control or supervision of the property with Nelson. By all accounts, Macon appears to be more like a temporary visitor to Nelson's home—he ran into her apartment because he saw the officers in the parking lot of the Palace Apartments, not because he was living in Nelson's apartment or because he was a frequent visitor there. Courts have held that a temporary visitor to a residence such as a mailman or a pizza deliverer cannot generally claim Fourth Amendment protections. See, e.g., Terry v. Martin, 120 F.3d 661, 664 (7th Cir. 1997).

Ultimately, Macon has not alleged any facts to support a finding by this court that he had a legitimate expectation of privacy in Nelson's home. Therefore, the court finds that Macon does not have standing to object to the search of the apartment. Additionally, as explained below, even if Macon did have standing to object to the search—which he does not—the court finds that Nelson's consent to the search obviates any Fourth Amendment concerns with this search.

### 2. Nelson's Consent

Voluntary consent is an exception to the Fourth Amendment's prohibition against warrantless searches. See Florida v. Jimeno, 500 U.S. 248, 250–51 (1991) ("[I]t is no

doubt reasonable for the police to conduct a search once they have been permitted to do so."). The court finds that Macon's Fourth Amendment claim also fails because Nelson gave voluntary verbal consent and signed a "consent to search" form for police officers to search the apartment.

While a search conducted without a warrant is "per se unreasonable," it is well-settled that one of the established exceptions to the requirement of a warrant and probable cause is a search conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). The government bears the burden of proving, by a preponderance of the evidence, that it obtained a "knowing and voluntary" consent to a search. United States v. Mendenhall, 446 U.S. 544, 557 (1980); United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007). The court finds that the government has met this burden here.

The undisputed facts demonstrate that while Officers Mallek and Newcomb were waiting in the hallway outside Nelson's apartment, Nelson opened the door to her apartment and provided verbal consent to enter her apartment. Def.'s Mot. 3. Once Sgt. LaFromboise arrived at the scene and spoke to Nelson, she once again gave verbal consent to a search the apartment. Def.'s Mot. 4. The statements made and physical demeanor of the officers and Nelson, both before and after Nelson answered the door of her apartment, stand in contrast to cases where courts have found that consent was involuntary. Cf, Gregg v. Ham, 678 F.3d 333, 337, 342 (4th Cir. 2012) (holding that consent was involuntarily given by a woman alone in her home after a bondsman and a police officer violently shook her door); Orhorhaghe v. I.N.S., 38 F.3d 488, 500 (9th Cir. 1994) ("It is well established that there can be no effective consent to a search or seizure if that consent follows a law enforcement officer's assertion of an independent right to

engage in such conduct."). In addition to the verbal consent that Nelson provided to the officers to search her apartment, Nelson was also provided a "consent to search" form, which she read, indicated that she understood, and signed. Def.'s Mot. 4. There is no indication that Nelson signed the consent form because she was coerced by officers at the scene.

Both Nelson's verbal consent and her signed written consent form have numerous indicia of reliability, and so the court finds that Nelson gave "knowing and voluntary" consent for officers to enter the residence.[2] Buckner, 473 F.3d at 554. Nelson was an adult fully capable of communicating consent. Macon has presented no facts suggesting that that the officers used hostile, accusatory, or threatening language. Instead, the facts indicate that the officers asked for permission to enter in a conversational tone, and Nelson freely and casually allowed officers to enter. There is no indication that Nelson's consent was "coerced by threats or force, or granted only in submission to a claim of lawful authority." Schneckloth, 412 U.S. at 233. In sum, the government has met its burden by a preponderance of the evidence that consent given to enter and search the residence voluntarily was given.[3]

---

[2] Nelson was not presented as a witness during the hearing. The court draws upon the facts stipulated to by the parties as well as the testimony presented in the preliminary hearing to determine if Nelson's consent was voluntary.

[3] Of course, even if consent was voluntarily given, a search may exceed the scope of the consent. United States v. Jones, 356 F.3d 529, 534 (4th Cir. 2004) (A "suspect may impose limits on the items in an area subject to the consent search.") "When an official search is properly authorized—whether by consent or by the issuance of a valid warrant—the scope of the search is limited by the terms of its authorization." Walter v. United States, 447 U.S. 649, 656-57 (1980). The relevant question when determining if law enforcement officers have exceeded the scope or a valid consent search is "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Jimeno, 500 U.S. at 251. The scope of the search depends both on what the officers asked Nelson when they were outside her apartment, and how Nelson

### B. Honda CRV Search

Macon next challenges the search of the Honda CRV, which is where the officers found the Springfield Arms Smith and Wesson Model XD .40 Caliber Pistol and .40 Caliber Ammunition. The court finds that Macon, as an unauthorized user of the Honda CRV, does not have standing to challenge the search.

A defendant must submit persuasive evidence of a privacy interest in a vehicle to have standing to assert a Fourth Amendment challenge to a search of the vehicle. United States v. Manbeck, 744 F.2d 360, 374 (4th Cir. 1984). In determining whether Macon has standing to challenge the search of the Honda CRV, the inquiry is whether whether Macon has a possessory or ownership interest in the Honda CRV. "Possessory or ownership interest" can be defined broadly—a reasonable expectation of privacy may be shown "'either by reference to concepts of real or personal property law or to understandings that are recognized and permitted by society.'" Minnesota, 525 U.S. at 88 (quoting Rakas, 439 U.S. at 142 n. 12). Macon has alleged no facts that he owned the Honda CRV. Even a defendant who lacks an ownership interest may still have standing to challenge a search, but he must show "joint control" or "common authority" over the property searched. See United States v. Portillo, 633 F.2d 1313, 1316 (9th Cir. 1980) (holding that defendant has standing to challenge a search of a friend's car because he was in possession of the car with the permission of the owner). Here, Macon presents no argument that he had any permission from Jenkins, the Honda CRV's owner, to use the

---

responded when giving the officers consent to enter and search. It also depends on the text of the written consent form that Nelson signed, and if it confined the search in some way that would have made the officers lifting the mattress outside the scope of the search. Under Rakas, the burden is on Macon to make the argument that Nelson's consent was confined and that the search was somehow outside of that scope. He has failed to do so.

car or even be inside the car. Indeed, Jenkins advised the officers that she was not aware of any parties who should have had access to the Honda CRV. Since Macon was an unauthorized user of the Honda CRV, he has no expectation of privacy in the area being searched. See United States v. Wellons, 32 F.3d 117, 119 (4th Cir. 1994) (holding that unauthorized driver of rental car had no expectation of privacy in the car or any container found in the car, and denying standing to challenge search of luggage found in trunk of car). Therefore, the court finds that Macon does not have standing to challenge the search of the Honda CRV.

## IV.   CONCLUSION

For the reasons set forth above, the court **DENIES** Macon's motion to suppress in full.

**AND IT IS SO ORDERED**.

 

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**June 16, 2017**
**Charleston, South Carolina**